**Fagan DICKSON**

v.

**Richard NIXON and Elmer Statts.**

**Civ. A. No. A–74–CA–46.**

United States District Court,
W. D. Texas,
Austin Division.

May 24, 1974.

**1346**

James R. Weddington, Austin, Tex., for plaintiff.

William S. Session (U. S. Atty.), Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., Carla A. Hills, Harland F. Leathers, John M. Kelson, Asst. Attys. Gen., Washington, D. C., for defendant.

Before THORNBERRY, Circuit Judge, and ROBERTS and WOOD, District Judges.

ROBERTS, District Judge:

## MEMORANDUM OPINION AND ORDER

This cause comes before the Court on this day for consideration of Defendant's Motion to Dismiss. Plaintiff brings this suit in his capacity as a taxpayer, challenging the constitutionality of provisions of the Emergency Security Assistance Act of 1973, Public Law 93–199. At Plaintiff's request, a three-judge court has been convened pursuant to 28 U.S.C. §§ 2282, 2284.

The Emergency Security Assistance Act of 1973 was enacted in response to the renewal of Arab-Israeli hostilities on October 6, 1973. The Act authorizes the President to grant up to $2.2 billion in emergency military assistance to Israel, and further authorizes the President to release Israel from its contractual obligations to pay for defense articles and services purchased from the United States Government during the period of October 6, 1973 through June 30, 1974. Plaintiff contends that

> The State of Israel was created by and is an instrument of the larger entity known as the "Jewish People." As the present governing force in Israel, the Jewish people constitute "an establishment of religion" within the meaning of the First Amendment.

Plaintiff's Complaint at 3. Accordingly, Plaintiff contends that the giving of aid to Israel by the United States is unconstitutional as violative of the First Amendment's command that "Congress shall make no law respecting an establishment of religion. . . . "

■ The judicial power of the federal courts is limited by Article III, Section 2 of the Constitution to "cases" and "controversies." Implicit in these words are "complexities which go to the very heart of our constitutional form of government," Flast v. Cohen, 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). In response to these complexities the courts have developed through the years two rather clear doctrines intended to contain the federal judiciary within the boundaries set out in Article III of the Constitution: the doctrine of "standing;" and the "political question" doctrine. "Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine." Flast v. Cohen, *supra* at 95.

■ The question of justiciability in this case could easily be resolved against Plaintiff were it not for the fact that this suit is brought under the Establishment Clause of the First Amendment. The long-established general rule is that an individual taxpayer, suing only in his capacity as a taxpayer, has no standing to challenge the constitutionality of a federal spending statute. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). In deciding the case of Flast v. Cohen, *supra*, involving a

challenge by taxpayers to the allocation of federal money to parochial schools as an "establishment of religion," however, the Supreme Court of the United States created an exception to that general rule. The Court concluded that the Establishment Clause is a specific limitation on the spending power of Congress, and that a taxpayer has a stake in assuring that this limitation is not breached by Congress. This case poses the novel question of whether an individual taxpayer has the same interest in preventing foreign aid money from being used for religious purposes.

The Court in *Flast* defined the limits upon taxpayer suits:

> The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

Flast v. Cohen, *supra* at 102–103.

Article I, Section 8 of the Constitution grants Congress the power to levy taxes ". . . to pay the Debts and provide for the common Defence and general Welfare of the United States. . . ." The Court in *Flast* dealt specifically only with a "constitutional challenge . . . to an exercise by Congress of its power under Art. I, § 8, to

spend for the general welfare. . . . " Flast v. Cohen, *supra* at 103. The present case involves not an expenditure for the general welfare, but rather a provision for what is, in the opinion of Congress, "the common Defence." We must, therefore, decide whether the "nexus" found to exist in *Flast* is present in this case.

There is language in the *Flast* decision to support the proposition that standing was granted primarily because of the necessity for continuing vigilance against the threat of governmental intrusion into the religious liberties of American citizens.

> Our history vividly illustrates that one of the specific evils feared by those who drafted the Establishment Clause and fought for its adoption was that the taxing and spending power would be used to favor one religion over another or to support religion in general. . . . The concern of Madison and his supporters was quite clearly that religious liberty ultimately would be the victim if government could employ its taxing and spending powers to aid one religion over another or to aid religion in general.

Flast v. Cohen, *supra* at 103–104. Thus, while the Establishment Clause served as the "specific constitutional limitation" on the taxing and spending power of Congress, the "nexus between the (taxpayers') status and . . . the constitutional infringement alleged" was, in reality, provided by the ultimate threat to the taxpayers' religious liberty, an interest specifically protected in the Free Exercise Clause of the First Amendment.

■■ Clearly, the threat to a taxpayer's religious liberty provides the nexus sufficient to sustain his standing to challenge any expenditure which might constitute a domestic establishment of religion. When, however, that same tax money is given as foreign aid

to another sovereign nation, the taxpayer's interest is substantially less in assuring that the recipient nation will not use the money in furtherance of religion. Indeed, his interest is no more than a monetary interest resulting from increased tax liability, and, as such, is "so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity." Frothingham v. Mellon, 262 U.S. 447, 487, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). In reaching this decision we do not decide or intimate that Congress' power to tax and spend to "provide for the common Defence" may never be subject to a taxpayers' suit based upon the Establishment Clause. We decide only that, in the context of this case, involving only expenditures in the form of aid to another sovereign nation, an insufficient "nexus" exists between the taxpayer's status and the constitutional infringement alleged. Plaintiff's claim in this case is no more than a "generalized grievance about the conduct of government." Flast v. Cohen, *supra* at 106. Accordingly, Plaintiff lacks standing to bring this suit.

Moreover, we are of the opinion that this cause presents a nonjusticiable "political question" which cannot be properly entertained by this Court. The "political question" doctrine was perhaps first imbedded in American jurisprudence by Chief Justice John Marshall in Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803). Chief Justice Marshall noted in that decision that the President is vested with certain political powers which are not judicially reviewable.

By the constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character and to his own conscience. *Id.* at 165–166.

Foremost among the "political powers" which the courts have recognized to be committed to the discretion of the executive and legislative—the "political"—branches of government is the conduct of foreign affairs.

The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—"the political"—departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision.

Oetjen v. Central Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 311, 62 L.Ed. 726 (1918). While we recognize that not every controversy which touches foreign relations lies beyond judicial cognizance, we conclude that the question here presented " . . . in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature . . ., and of the possible consequences of judicial action," Baker v. Carr, 369 U.S. 186, 211–212, 82 S.Ct. 691, 707, 7 L.Ed.2d 663 (1962), is one in which we must defer to the judgment of the political branches of government. This is clearly a case turning on "standards that defy judicial application," involving "the exercise of a discretion demonstrably committed" to the political branches, and "uniquely demand(ing) single-voiced statement of the Government's views." *Id.* at 211.

Inasmuch as we conclude that Plaintiff lacks standing to maintain this suit and that the issue presented is a nonjusticiable political question, we need not reach the issue of the amenability of the President to suit in this case. It is accordingly

Ordered, adjudged and decreed that Plaintiff's Complaint be, and hereby is, dismissed.